## RALSTON PURINA CO. v. SANIWAX PAPER CO. et al.

## SAME v. SANIWAX PAPER CO.

District Court, W. D. Michigan, S. D. February 8, 1928.

Nos. 2064, 2095.

1. **Trade-marks and trade-names and unfair competition ⊛61—Use of trade-mark, to constitute infringement, need not necessarily be on same species of goods, but must be on same class of goods as those of owner.**

To sustain a charge of infringement of a trade-mark, the owner must have used it on the same class of goods put out by the alleged infringer, but not necessarily on the same species of goods.

2. **Trade-marks and trade-names and unfair competition ⊛75—Likelihood of deceiving casual purchasers affords ground for relief from unfair competition, irrespective of actual confusion.**

Absence of actual confusion as result of use of another's trade-mark does not negative exist-

ence of unfair competition; but, if casual purchasers of average intelligence might be deceived, sufficient ground is shown for relief.

**3. Trade-marks and trade-names and unfair competition ⊚⟹3(3, 5), 35—Trade-mark may merely represent quality or origin of articles, in which case any person interested in marketing commodity is entitled to protection thereunder.**

It is not essential to property, in a trade-mark that it should indicate any particular person as the maker of the article, but it may refer to the origin of the goods, or may represent quality of the articles offered for sale, in which case any person interested in putting the commodity on the market is entitled to protection in the use of the trade-mark.

**4. Trade-marks and trade-names and unfair competition ⊚⟹70(4)—Sale to and use by bakers of bread wrappers containing checkerboard design, resembling that used by manufacturer of flour to designate loaves made with its product, constituted unfair competition.**

Sale by paper company to bakers, and use by bakers, of bread wrappers containing checkerboard design, which resembled that used by flour-manufacturing company on wrappers to designate loaves of bread made from its flour, *held* to constitute unfair competition, warranting injunctive relief, where public might be misled as to the source of the ingredient.

In Equity. Suits by the Ralston Purina Company against the Saniwax Paper Company and others, and against the Saniwax Paper Company as sole defendant, to restrain alleged unfair competition and infringement of trade-mark. Decrees for plaintiff, granting injunctions prayed for.

Edwin E. Huffman, of St. Louis, Mo., for plaintiff.

Chappell & Earl, of Kalamazoo, Mich., for defendants.

RAYMOND, District Judge. The bills of complaint in the above cases are based upon alleged unfair competition in trade and infringement of trade-mark. Both involve substantially the same principles and have been submitted and considered together.

Plaintiff, having its principal office at St. Louis, Mo., is engaged in the manufacture and sale of whole wheat flour, whole wheat breakfast food, bran food, and stock and poultry feeds under sundry names. The defendant Saniwax Paper Company, having its principal office at Kalamazoo, Mich., is engaged in the manufacture and sale of waxed bread wrappers. Defendants John McDonald and James McDonald are bakers, doing business at Ludington, Mich., under the name of Ludington Baking Company, and are using bread wrappers manufactured by the Sani-

wax Paper Company, which are claimed by plaintiff to be so designed as to amount to unfair competition and infringement of trade-mark rights.

The complaint filed in suit 2095 is based upon the sale by the Saniwax Paper Company of similar bread wrappers to the Off Baking Company of Keokuk, Iowa. It appears that the plaintiff has for upwards of 30 years been engaged in the manufacture of flour, animal feeds, and breakfast food; its sales extending throughout the United States. About the year 1900 it adopted as a general trade-mark, which has since that time been applied to substantially all of its products, what is referred to as "checkered marking"; this consisting of two or more rows of colored squares, and, so far as applied to the products involved in these cases, of red checkers on a light background. This marking has been applied to packages and bags of whole wheat flour, and to loaves of bread made from plaintiff's flour; the design being imprinted on sheets of waxed paper in which the loaves are wrapped for sale. For the past 16 years, in order to promote sale of its whole wheat flour, plaintiff has furnished to bakers bread wrappers bearing the checkered mark and the words "Purina Whole Wheat Bread," and granted permission to apply these wrappers to bread made from plaintiff's whole wheat flour.

It is the claim of plaintiff that these wrappers identify in the minds of the public bread baked from its flour, and constitute the means by which its advertising becomes effective to induce the purchase of bread so baked. The evidence discloses that a large and growing business has thereby been developed, and there can be no question that the quality of plaintiff's whole wheat product and extensive advertising in connection therewith have created a large demand for its product.

The Ludington Baking Company purchased from the defendant Saniwax Paper Company waxed bread wrappers with checkered trade markings, the checkered design being confined to three rows of checkers on each end of the wrapper, the wrappers also carrying designs of blue birds together with the names of the bakers. The Off Baking Company wrapper, also purchased from the Saniwax Paper Company, is completely covered with the checkerboard design. It is unnecessary to give further detail of the similarity existing among these various designs. It is sufficient to say that after careful consideration the court is convinced that the similarity is sufficient to lead to confusion in

the minds of present and prospective customers as to the origin of the product.

It is urged by the defendants that there can be no unfair competition where there is no actual competition in business; that plaintiff company is not now and never has been engaged in the baking business, or in the manufacture and sale of bread; that there is no evidence showing any competition between plaintiff, a manufacturer of whole wheat flour, and Ludington Baking Company, of Ludington, and the Off Baking Company, of Keokuk, Iowa, who are bakers of bread. It is also urged that there is no proof of any competition with the Saniwax Paper Company, whose sole business is to manufacture bread wrappers. It is said that there is in fact no competition between plaintiff and defendants, that there is no evidence of any actual confusion in the minds of the public, and that any trade rights that may exist in "Purina Whole Wheat Bread" or in "Purina Whole Wheat Bread" wrappers applied to whole wheat bread, reside in the baker making the bread or using the wrappers, and not in the manufacturer of the flour.

These contentions lose sight of the widening scope of protection accorded by the courts in the field of unfair competition. This trend is indicated by cases hereinafter referred to, from which it appears that relief is frequently granted, in the absence of technical trade-mark infringement, and may rest solely on the single issue of unfair competition, which does not necessarily involve unfair competition in the sale of goods, but the unfair appropriation and use of a competitor's mark, with the intention to profit in the sale of goods of a related character.

[1] To sustain a charge of infringement of a trade-mark the owner must have used it on the same class of goods, put out by the alleged infringer, but not necessarily on the same species of goods. Nieman v. Plough Chemical Co., 22 F.(2d) 73, 78 (C. C. A.—6). In the case of Hudson Motor Car Co. v. Hudson Tire Co. (D. C.) 21 F.(2d) 453, a tire company was enjoined from using the name, phrase, and triangular trade-mark used by an automobile manufacturer.

In the case of Wall v. Rolls-Royce of America, Inc. (C. C. A.) 4 F.(2d) 333, it was recognized that the sale of an unsatisfactory Rolls-Royce radio tube would sow distrust of the excellence of the product which the words "Rolls-Royce" had previously stood for.

It has been held that the trade-mark "kodak" on cameras was infringed by "kodak" on bicycles (Eastman Photographic Materials Co., Ltd., v. John Griffiths Cycle Corp., Ltd., 15 Rep. Pat. C. A. S. 105, 110), and that the trade-mark "Aunt Jemima" on flour was infringed by "Aunt Jemima" for syrup (Aunt Jemima Mills Co. v. Rigney & Co. [C. C. A.] 247 F. 407, L. R. A. 1918C, 1039). The Sixth Circuit Court of Appeals has held that a trade-mark for a magazine might be infringed by a similar mark on hats, although there was no actual market competition between the products. Vogue Co. v. Thompson-Hudson Co. et al., 300 F. 509, 512. In the latter case it is said:

"We come, then, to what is called 'unfair competition.' This is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another. This rule is usually invoked when there is an actual market competition between the analogous products of the plaintiff and the defendants, and so it has been natural enough to speak of it as the doctrine of unfair competition; but there is no fetish in the word 'competition.' The invocation of equity rests more vitally upon the unfairness. If B. represents that his goods are made by A., and if damage therefrom to A. is to be seen, we are aware of no consideration which makes it controlling whether this damage to A. will come from market competition with some article which A. is then manufacturing or will come in some other way."

[2] The fact that actual confusion has not been established is not controlling. If casual and unwary purchasers of average intelligence were likely to be deceived, this is sufficient ground for relief. See Nieman v. Plough Chemical Co., 22 F.(2d) 73, 77 (C. C. A. 6).

[3] It has long been recognized that a trade-mark may indicate, not necessarily the maker of the goods, but the origin of the goods, and there would seem to be no good reason why a manufacturer of flour may not by proper means indicate to consumers of bread that the origin of its principal ingredient is from a certain source. See Potter-Wrightington v. Ward Baking Co. (D. C.) 288 F. 597; Id. (C. C. A.) 298 F. 398; G. & C. Merriam v. Saalfield (C. C. A.) 198 F. 369; DeVoe Snuff Co. v. Wolff (C. C. A.) 206 F. 420.

It is insisted by defendants that, inasmuch as plaintiff does not bake bread, but is engaged in the sale of whole wheat flour, any trade-mark rights existing in whole wheat bread, or in whole wheat bread wrappers applied to whole wheat bread, accrue solely to the baker using them, and not to the manufacturer of the flour. But it is not essential to property in a trade-mark that it

should indicate any particular person as the maker of the article to which it is attached; it may represent to the purchaser the quality of the things offered for sale, and in that case is of value to any person interested in putting the commodity, to which it is applied, upon the market, and he is entitled to protection in its use. See Godillot v. Harris et al., 81 N. Y. 263.

[4] It seems to the court that the business of baking bread is so intimately and necessarily connected with the production of a proper quality of flour that the public may easily be confused as to the source of the principal ingredient of the bakers' product. By the practices here conceded the benefits of a good will resulting from reputable products and extensive advertising might be appropriated by others than the owners, or the good will be in part destroyed by placing on the market bread of an inferior quality, so marked as to lead the public to believe that the source of the flour used was the same. Both are concerned with different phases of the same general activity—the conversion of wheat into bread. That plaintiff has acquired in connection with its checkerboard design a good will of value cannot be questioned. That defendants' use of a checkerboard design, so closely resembling, to the casual customer, that of plaintiff, would enable defendants to share in plaintiff's good will, is clear.

Plaintiff may have decrees for injunctions as prayed.